AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>Ethan LIPPER<br><br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.: 6:23-mj- 1109

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___1/16/2023 through 2/1/2023___ in the county of ___Orange___ in the ___Middle___ District of ___Florida___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §2422(b) | Attempted Online Enticement of a Minor |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Jennifer Wing, TFO, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___2/2/23___

_____
*Judge's signature*

City and state: ___Orlando, Florida___

Leslie Hoffman Price, U.S. Magistrate Judge
*Printed name and title*

STATE OF FLORIDA

COUNTY OF ORANGE

CASE NO. 6:23-mj- *1109*

*1110*

## MASTER AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Jennifer Wing, after being duly sworn, depose and state:

1.     I am a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) and have been since July 2021. Furthermore, I am a Detective with the Orlando Police Department and have approximately 11 years of law enforcement experience. I have two degrees in Criminal Justice, a Bachelor of Science and a Master of Science, with a certificate in Criminal Profiling. I am a graduate of the TECO Criminal Justice Academy, where I completed a 770-hour Law Enforcement Academy. I have completed advanced training in the following courses: Interviews and Interrogations, Sex Crimes Investigations, Advanced Human Trafficking Investigations, Crisis Response in Child Abuse/Victim Assault Cases, Advanced Interviewing, Universal Interviewing Tactics for Patrol Officers, Detecting Truthfulness, Forensic Interviewing, Internet Crimes Against Children (ICAC) Investigation of Cybertips, Offenders of Children and Child Sexual Abuse Imagery, Under Cover Chats and Techniques (40 hour course), BitTorrent Investigations (40 hour course), Emule Investigations (24 hour course), Analysis of Child

Exploitation Material using Project VIC and Griffeye Analyze DI (16 hour course), ICAC Program Overview, and A Walk Through of ICAC Standards.

2.     In my capacity as an Orlando Police Officer, I have been involved in investigations related to drugs, thefts, economic crimes, burglaries, batteries, robberies, homicides, adult and child sex crimes, and child abuse investigations. I was a Property Detective, where I was assigned a large case load in the busiest sector of the city. I have written multiple arrest warrants and search warrants pertaining to property related crimes. In 2020, I was assigned to the Special Victims Unit, where I investigated or assisted in investigating Sexual Battery, Lewd or Lascivious Battery and Molestation, Kidnapping, Homicide, and Child Abuse cases.

3.     I am a current member of the Internet Crimes Against Children Central Florida Task Force (ICAC) where I have investigated over 800 sexually related or internet-based crimes. I have written multiple arrest and search warrants pertaining to sexually related or internet-based crimes. These search warrants have yielded lawful arrests and investigations. As a member of the ICAC Task Force, I have had the opportunity to consult with numerous experts at the local, state, and national levels in the area of child pornography, internet child solicitation, and computer forensics. On a daily basis, members

of the ICAC task force work as a team and share their expertise on various topics.

4. I have been dually sworn as a Special Deputy United States Marshal and assigned to the Violent Crimes Against Children (VCAC) FBI task force since 2021. I have participated in investigations involving sex crimes, child exploitation, child pornography, human trafficking, and computer crimes, among other things. I have also investigated and assisted in the investigations of possession, receipt, distribution, and production of child pornography. During the course of my training and investigations, I have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media.

5. This affidavit is submitted in support of a criminal complaint against ETHAN LIPPER (LIPPER) for a violation of 18 U.S.C. § 2422(b). This affidavit in also submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the Apple iPhone 14 Model A2342 located in the FBI's possession at 480 South Keller Road, Orlando, Florida 32810, further described in Attachment A, for the things described in Attachment B.

3

6.    As set forth in more detail below, I believe there is probable cause that LIPPER using facilities and means of interstate commerce, that is, the Internet and a cell phone, did knowingly attempt to persuade, induce, and entice an individual whom he believed had not attained the age of 18 years, to engage in sexual activity for which he could have been charged with lewd or lascivious battery (engage in sexual activity with a person 12 years of age or older but less than 16 years of age), in violation of Florida Statutes § 800.04(4)(a)(1) & (2), all in violation of 18 U.S.C. § 2422(b).

7.    I make this affidavit from personal knowledge based on my participation in this investigation, information from other criminal investigators, information from law enforcement officers, information from agency reports, and review of documents provided to me by these witnesses and law enforcement officers.  Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint and search warrant, I have not set forth each and every fact learned during the course of this investigation. For example, because of the high number of text messages exchanged between LIPPER and the notional minor (the OCE) during the course of the investigation, I have included just selected portions of the text message exchanges sufficient to establish probable cause.

4

8.     Title 18, United States Code, Section 2422(b) prohibits a person from using the mail or any facility or means of interstate or foreign commerce to knowingly attempt to persuade, induce, entice, or coerce an individual who has not attained the age of 18 years, to engage in prostitution or sexual activity for which any person can be charged with a criminal offense.

## INVESTIGATION

9.     On January 16, 2023, a Detective with the Oviedo Police Department was posing in an undercover capacity ("UC") as a 14-year-old male, "Sam," on Kik. Kik is a mobile messaging application that can be used on both Android and iPhone. The UC began communicating with a male "Luke Luckie", "mitchymills424", later identified as LIPPER, on a Kik group called "Orlando Teens". LIPPER joined the Kik group "Orlando Teens" on January 16, 2023. The UC, posing as a 14-year-old, messaged LIPPER in a private message "Hi". The UC originally told LIPPER that he was 15 years old and from Oviedo, Florida. However, the UC later explained to LIPPER that he was actually only 14-years-old, and LIPPER continued the conversation with the UC. LIPPER identified himself as "Ethan" and a 20-year-old living near Universal Boulevard. LIPPER also stated that he had moved down from New Jersey the previous year and that his birthday was on a specific day of a specific month. A search of investigative resources revealed

5

that LIPPER previously resided in New Jersey and that his date of birth is on the same day of the same month as he stated online to the UC.

10.     Between January 16, 2023, and February 1, 2023, LIPPER communicated with the UC using Kik. During that time, LIPPER sent the UC pictures of himself, which are of the same person as photographs on LIPPER's employment and social media accounts. LIPPER later provided his cell phone number xxx-xxx-2782 to the UC, which investigative resources revealed belong to LIPPER. The UC sent LIPPER pictures of a teenage boy, that featured an image of a law enforcement officer in which the officer was approximately 14 years old at the time of the photograph.

11.     Between January 16, 2023, and January 19, 2023, LIPPER asked the UC, "Ur okay with me being 20?" The UC replied, "Ofc. are u ok with me being 15?" LIPPER replied, "Ofc…We kinda gotta be secretive tho…Little bro…Or cousin…Whatever floats your boat". LIPPER asked the UC, "Have you ever done stuff with a guy?...Like touched other guy…Have you ever kissed anyone?" LIPPER told the UC that he was in New Jersey visiting family (on or about January 18, 2023) and would be returning to Orlando the following day (on or about January 19, 2023).

12.     Between January 19, 2023, and January 25, 2023, the UC told LIPPER, "Well since u seem real and not a perv, i should be honest and tell u

i am 14. I turn 15 in march...Most people wont talk to me unless im 18 so i lied a lil. Im sorry. If u dont want to talk to me ne more i get it." LIPPER replied, "I don't mind...Thanks for trusting me...I feel like I'm still a perv lol...But if it's consensual it's not as bad I guess".

13.    LIPPER messaged the UC, "I'm lowkey nervous to meet you". The UC replied, "Im so nervous...maybe we shohld (sp) do this...shouldnt". LIPPER replied, "Ya...Idk...I want to so bad...Just risky. I don't want ur mom finding out or anything". LIPPER asked the UC, "What are you nervous about?" The UC replied, "Meeting up...u being older". LIPPER replied, "Right...You being younger...It's like illegal if we got caught...And that scares me". The UC replied, "We can go to jail". LIPPER replied, "No you can't lol I can...You would be the victim of a sexual predator...And I could blame you and say you lied about you (sp) age but 14 isn't close to 18 and idk if you look that old lol". The UC replied, "U think i look 18?" Lipper replied, "No lol that's why it wouldn't work".

14.    LIPPER and the notional 14-year-old child continued the conversation. LIPPER asked the UC, "And btw if we do get sexual at all. We can go as fast or slow as you want and if it becomes too much we stop...we take it slow and I can show you..." LIPPER asked the UC, "Do you jerk off?" and stated "...Maybe we can start by just jerking off together...We can suck

each other". LIPPER told the UC, "Maybe I can play with your ass a little too if you want...I love a good butt". The UC replied, "Play with it how". LIPPER replied, "Hold it...Finger you maybe...If it smells good I'll lick it too...You can sit on my face". The UC asked LIPPER if it hurts. LIPPER replied, "Sex might hurt and fingering...But not eating it...It feels so good...But with enjoy (sp) lube and patience it will be easy...And a (sp) painless as possible because once you get past that initial pain it feels good". The UC replied, "I dont have lube". LIPPER replied, "I can bring some".

15.     LIPPER asked the UC "If you could be with anyone...How old would they be?" The UC replied, "Can I say 2 ages lol...Dont judge me lol...Id say 18 and like maybe 50". LIPPER replied, "I have ranges...For sex 10-20 and for love I want 22-26". The UC explained to LIPPER that he has a 10-year-old cousin and LIPPER asked, "Is cute?" The UC replied, "Ummm...Idont (sp) see him that way". LIPPER replied "That's fair haha...It's okay I have you..." The UC replied, "Well im not 10" and LIPPER acknowledged the UC's age "Ur 14...It's close...He prob can't even cum yet" (referring to the discussed 10-year-old cousin).

16.     LIPPER asked the UC, "Is it weird that I like boys that young?" The UC replied, "I dont think so...Have u ever hung out with 10". LIPPER replied, "I've never hung out with anyone under 18". The UC asked LIPPER,

8

"Thrn (sp) how do u know u like 10". LIPPER replied, "I don't honestly...It's a guess based on conversations and videos I've seen...I hate that it's wrong for me to like what I like". LIPPER explained that he is in a few groups on Kik with people "who are into boys too" and further explained "It's good to know I'm not alone...some of them scare me tho...Like I don't get me wrong. I like little boys. But they talk about raping 2 year olds...I'm not into that". On or about January 25, 2023, LIPPER sends the UC six videos, in which at least two of the videos contain CSAM. LIPPER explained to the UC that the videos of alleged Child Sexual Abuse Material (CSAM) never leave the Kik application, and that he just watches them in the application.

17.     The videos of CSAM sent to the UC by LIPPER included an approximately one minute and two second video depicting an adult male and an approximately 9–11-year-old child. The child performs fellatio on the adult male and the adult male rubs his erect penis on the child's penis. The adult also massages the child's buttocks and spreads open the child's buttock cheeks, exposing his anus. The second video included an approximately eight second video depicting an adult male and an approximately 10–12-year-old boy. The adult male is performing penile/anal sexual intercourse with the child.

18.     On or about January 25, 2023, LIPPER sent the UC a video, approximately one minute in length, showing an adult male performing

penile/anal sexual intercourse with a male who has no visible hair, small stature, and appears not fully developed. There does not appear to be any hair on his anus and testicles. LIPPER details the video by stating, "This video was sent to me by a 12-year-old and that's his uncle's friend...I've been talking to this boy for a while now. He doesn't realize what sex is and he thinks that the penis cleans things like his mouth and bum so he lets his uncle and uncles friends fuck him and sucks their dicks so that they are super clean...And thinks cum makes it even cleaner".

19.     On or about January 27, 2023, LIPPER sends the UC an approximately 36 second video containing two males. One male is performing oral sex on the other male's anus. LIPPER details the video by stating "I wanna do this to you". LIPPER also replied to the UC, "I'm excited for Wednesday". LIPPER and the UC had previously discussed about meeting up on a Wednesday, which is the UC's "early release day" from school.

20.     On or about January 30, 2023, LIPPER solicited the notional child for sex and discussed engaging in sexual relations with the UC's notional 10-year-old cousin. LIPPER also asked the UC if he, the notional 14-year-old child, and the notional 10-year-old cousin could get together in an attempt to engage in sexual relations with the 10 year old.  The UC replied, "Idk if he even knows abt this kinda stuff". LIPPER replied, "He might not...You could

teach him". The UC replied, "Ive never done it before lol". LIPPER replied,
"I'll teach you". LIPPER also replied, "How would we get the three of us
together without anyone else tho?...Hehe I can't wait to see
you...Wednesday".

21.     On Wednesday, February 1, 2023, LIPPER asked the UC for the
address of where they were going to meet up. The UC provided the address to
the predetermined location and they agreed to meet at 2:00 p.m.

22.     On February 1, 2023, LIPPER arrived at the predetermined
location at approximately 2:40 p.m. LIPPER arrived and parked. After
parking, LIPPER was taken into custody by the Oviedo Police Department.
LIPPER was handcuffed and placed into a vehicle to be interviewed.

23.     After the interview concluded, LIPPER asked if he could obtain
several phone numbers from his cell phone. A blue Apple iPhone 14 was then
collected from LIPPER's vehicle. LIPPER provided the password and
identified the phone as belonging to him. A confirmation phone call was made
to LIPPER's cell phone which confirmed that the phone number  provided by
LIPPER to the UC in the Kik communication was the same phone that was
collected.

24.     The UC told LIPPER more than once during the approximately
two weeks of communication that he was 14 years old and in the 9th grade.

11

LIPPER solicited the UC for sex on multiple occasions and sent videos of CSAM to the UC.

### INTERVIEW OF ETHAN LIPPER

25.     LIPPER was advised that he was under arrest. Prior to the recorded interview, LIPPER was advised of his "Miranda Rights". During the interview, LIPPER was asked what he had been doing online lately. LIPPER stated that he has been talking to a lot of people and that people say what they want. LIPPER was then asked how old did the boy say he was. LIPPER declined to answer and requested a lawyer. Upon request of a lawyer, the interview was immediately terminated.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

26.     The property to be searched is a Blue Apple iPhone 14 Model A2342, hereinafter the **TARGET CELLPHONE**. The **TARGET CELLPHONE** is currently located at the FBI Orlando Resident Agency located at 480 South Keller Road, Orlando, Florida 32810.

27.     The applied-for warrant would authorize the forensic examination of the **TARGET CELLPHONE** for the purpose of identifying electronically stored data particularly described in Attachment B.

## **TECHNICAL TERMS**

28.  Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other

13

information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by

14

computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

d. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

29.   Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as communication device to entice and collect images of CSAM. In my training and experience, examining

15

data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

30.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

31.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

  a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

  b. Forensic evidence on a device can also indicate who

has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

17

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

32. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

33. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

34. I believe there is probable cause that LIPPER, using facilities or means of interstate commerce, that is, the Internet and a cell phone, did knowingly attempt to persuade, induce, and entice an individual whom

18

LIPPER believed had not attained the age of 18 years, to engage in sexual activity for which he could have been charged with lewd or lascivious battery (engage in sexual activity with a person 12 years of age or older but less than 16 years of age), in violation of Florida Statutes § 800.04(4)(a)(1) & (2), all in violation of 18 U.S.C. § 2422(b). I also submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **TARGET CELLPHONE** described in Attachment A to seek the items described in Attachment B

Jennifer Wing, Task Force Officer
Federal Bureau of Investigation

Subscribe and sworn to before me
on this 2nd day of February 2023.

HON. LESLIE HOFFMAN PRICE
United States Magistrate Judge

19

## ATTACHMENT A

The property to be searched is a Blue Apple iPhone 14 Model A2342, hereinafter **the TARGET** CELLPHONE. **The TARGET** CELLPHONE is currently located at the FBI Orlando Resident Agency, located at 480 South Keller Road, Orlando, Florida 32810.

This warrant authorizes the forensic examination of the **TARGET CELLPHONE** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### Particular Items to be Seized

1.    The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use, or which is or has been used as the means of committing a criminal offense, namely 18 U.S.C. § 2422(b), from December 1, 2022, through February 1, 2023:

      a. Electronically stored communications or messages reflecting chat sessions or communications with any minor, in furtherance of the above-mentioned violations.

      b. Electronically stored communications or messages reflecting chat sessions with any child victims, in furtherance of the above-mentioned violations.

      c. Any digital images or videos of Child Sexual Abuse Material (CSAM).

      d. Any documents or records regarding the sexual exploitation of any minor.

      e. Storage media used as a means to commit the violations described above.

f. Any record or document bearing on the violations described above establishing the use of a mobile phone or facility of interstate commerce.

2. For any computer, mobile device, or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

    a. Evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b. Evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    c. Evidence of the lack of such malicious software;

    d. Evidence indicating how and when the computer was accessed or

used to determine the chronological context of computer access, use, and events relating to the crimes under investigation and to the computer user;

e. Evidence indicating the computer user's knowledge and/or intent as it relates to the crimes under investigation;

f. Evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g. Evidence of programs (and associated data) that are designed to eliminate data from the COMPUTER;

h. Evidence of the times the COMPUTER was used;

i. Passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j. Documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k. Records of or information about Internet Protocol addresses used by the COMPUTER;

l. Records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms

that the user entered into any Internet search engine, and records of user-typed web addresses; and

m. Contextual information necessary to understand the evidence described in this attachment.

3.     Records and information relating to the identity or location of the persons suspected of violating the statutes described above.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "storage medium" includes any physical object upon which computer data can be recorded, including micro-SD cards, macro-SD cards, SIM cards, cellular phones capable of storage, memory cards, memory chips, and other magnetic or optical media.